```
             IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                       EL DORADO DIVISION
```

ELIZABETH L. TUBERVILLE                                    PLAINTIFF

v.                          No. 1:11-cv-01016

NEW BALANCE ATHLETIC SHOE, INC.
and NEW BALANCE, INC.                                     DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff's Motion to Remand and supporting Memorandum of Law (Docs. 13-14), Defendants' Response and Brief in Support (Docs. 16-17), and Plaintiff's Reply (Doc. 18), as well as supporting exhibits. Plaintiff disputes the existence of diversity jurisdiction in this case, as she contends that the amount in controversy does not exceed the sum or value of $5,000,000, pursuant to the jurisdictional requirements described in the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332 (d). For the reasons reflected herein, Plaintiff's Motion to Remand (Doc. 13) is **GRANTED**, and this case is remanded to the Circuit Court of Ouachita County, Arkansas.

**I.  Background**

On February 23, 2011, Plaintiff filed a putative class action complaint in the Circuit Court of Ouachita County, Arkansas, naming New Balance Athletic Shoe, Inc., and New Balance, Inc., as defendants and alleging violations of the Arkansas Deceptive Trade Practices Act (ADTPA) and a claim for unjust enrichment. Plaintiff

contends that Defendants unfairly and misleadingly represented to consumers that their athletic shoe's unique design conferred certain health benefits, though such benefits were not supported by scientific evidence. (Doc. 2).  Plaintiff argues that she and others similarly situated purchased Defendants' athletic shoes because the product was purported to "activate muscles" and "increas[e] calorie burn" in a way that standard athletic shoes did not (Doc. 2, ¶ 2).  In reliance on Defendants' marketing and advertising of its athletic shoes, Plaintiff alleges that she and a proposed class of "thousands" of Arkansas consumers purchased the shoes and incurred actual damage, while Defendants were unjustly enriched "as a result of the deceptive, unfair and misleading business practices."  (*See* Doc. 2, ¶¶ 30, 31, and 37).

Defendants responded to Plaintiff's complaint by removing this case to federal court on February 23, 2011.  In Defendants' Notice of Removal (Doc. 1), they contest that the amount in controversy would be limited to $74,000 per class member and/or $5,000,000 for the entire class.  Instead, Defendants argue that the aggregate of Plaintiff's claims as pled would or could exceed state court jurisdictional limits. Defendants ask this Court to consider three arguments militating against remand, all of which relate to calculating the amount in controversy:  1) Plaintiff and her counsel do not have the authority to stipulate to a limit on recovery that would bind the other class members; 2) Plaintiff's claims, on their face, actually amount to more than the

jurisdictional maximum allowed in state court, and 3) Plaintiff's claims for equitable relief and for "such other relief as this Court deems just and proper" translate to a potential for recovery in excess of state court jurisdictional limits.

Plaintiff moved to remand the case back to state court on March 16, 2011, citing in support of her motion her "binding stipulation" in the form of two affidavits, one from Plaintiff and one from her attorney, swearing that Plaintiff would not seek damages greater than the federal jurisdictional limits imposed by CAFA.

As a preliminary matter, each party suggests the other is seeking to thwart CAFA's legislative intent.  Plaintiff is accused of inserting stipulations in the complaint so as to avoid removal; Defendants are accused of ignoring Plaintiff's stipulations and exaggerating the potential of Plaintiff's aggregate damages in an attempt to force removal.  In light of the fact that Plaintiff has taken the extreme measure of attaching affidavits to her complaint that explicitly limit her potential recovery, this Court will resolve the jurisdictional dispute by scrutinizing the evidentiary and legal burdens each party must bear in CAFA cases.

**II.  Discussion**

    **A.  CAFA Jurisdiction and Legal Burdens**

For class actions, the removing party has the burden of showing that jurisdiction in the federal courts is proper and the requisite amount in controversy has been met.  *Hatridge v. Aetna*

*Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). Federal courts must strictly construe the federal removal statute and resolve any ambiguities about federal jurisdiction in favor of remand. *Transit Casualty Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

In this case, CAFA operates to grant federal district courts original jurisdiction over class actions where there is diversity of citizenship between the plaintiff and defendants and when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S. C. § 1332 (d)(2). The claims of the potential class members must be aggregated to determine whether the jurisdictional minimum has been met. 28 U.S.C. § 1332 (d)(6).

As the complaint does not specify the total amount at issue in this litigation, the Court must determine whether the amount in controversy is either over or under the $5,000,000 threshold. The analysis of the burden of proof for removal starts with the party seeking removal, the Defendants. They must show by a preponderance of the evidence that the amount in controversy exceeds the federal court's minimum threshold for jurisdiction. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). Though Defendants bear the initial burden of proof in a removal action, Plaintiff correctly identifies this case as falling under the purview of the Eighth Circuit's holding in *Bell v. Hershey*, 557 F.3d 953 (8th Cir. 2009), in which the Court described the

preponderance of the evidence standard that Defendants must meet as "lenient," in that the test is "not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are..." *Id., citing Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

The *Bell* case involved a purported class action in Iowa court against several chocolate manufacturers.  The plaintiff in that case alleged violations of state antitrust laws.  The defendants filed a notice of removal to the federal court pursuant to CAFA, and the plaintiff in turn moved to remand to state court.  *Bell*, 557 F.3d at 954.  Though the Eighth Circuit in *Bell* ultimately remanded the case to the district court to determine the appropriate amount in controversy, the case is helpful for it clarifies the burdens each party must meet in a CAFA removal action, and it provides a roadmap for a CAFA plaintiff to follow to avoid removal to federal court.  *Id.* at 959.

Despite the fact that relatively little is required in the way of detail to meet the preponderance standard, the *Bell* court still described it as a "fact intensive" inquiry. *Id.*  Other federal courts have stated that mere speculation or conjecture on the part of the defendant as to the amount in controversy will not be sufficient to meet the preponderance standard.  *See, e.g., Thomas v. Southern Pioneer Life Ins. Co.*, 2009 WL 4894695 at *2 (E.D. Ark. Dec. 11, 2009); *Nowak v. Innovative Aftermarket Sys.*, 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007) (defendant did not meet

preponderance burden because it did not offer evidence as to the potential number of class members or damage total for each member).

If the preponderance standard was met and Defendants could establish enough detail to meet the jurisdictional requirement for the amount in controversy, this Court would then turn its attention to the Plaintiff, who would have to establish "to a legal certainty" that her claim is under the $5,000,000 jurisdictional minimum. *Bell*, 557 F.3d at 956 (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)). The analysis of burdens in a removal case is unique: the party opposing removal may not present new evidence to meet her burden during removal proceedings. Instead, the Court may only look to the initial pleadings contained in the record "as of the instant of removal" to determine whether the Plaintiff has met her legal certainty burden. *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992), *cited with approval by Bell*, 557 F.3d at 958.

The question in the instant case, one which no other court has definitively answered, is whether a plaintiff may meet her legal certainty burden by stipulating at the time the complaint is filed that she will not seek more than the federal jurisdictional minimum for herself and the putative class. To answer that question, this Court must look to the guidance in *Bell*:

> "In order to ensure that any attempt to remove would have been unsuccessful, Bell could have included a binding stipulation with his petition stating that he would not seek damages greater than the jurisdictional minimum upon remand..." *Id.* at 958, *citing De Aguilar v. Boeing Co.*, 47

> F.3d 1404, 1412 (5th Cir. 1995) ("[l]itigants who want to prevent removal must file a binding stipulation or affidavit with their complaints...").

Even though the *Bell* court did not specifically reference the legal certainty burden, it did conclude that a clear stipulation, when submitted in good faith along with the complaint, would meet the Court's requirements for defeating removal. By extension, it follows that if a stipulation can defeat removal, it can also satisfy the plaintiff's legal certainty burden.

### B. Due Process Concerns for the Class

Defendants think it inappropriate for Plaintiff to bind the as-yet-unknown class members with her stipulation limiting the total recovery. Defendants raise due process concerns on behalf of the putative class and assert that allowing the Plaintiff to "submit a stipulation waiving the rights of all the purported class members she seeks to represent...would gut CAFA and contravene its very purpose to eradicate class action abuses that were adversely impacting interstate commerce." (Doc. 17 at 4-5) Further, Defendants take exception to "Plaintiff's attempt here to carve out an 'Arkansas only' class action," calling such a move "class action abuse." *Id.* at 5.

Though the Court commends Defendants for their spirited advocacy on behalf of the putative class, it is clear that, contrary to Defendants' assertions, the plaintiff is still "master of the complaint" even in a class action subject to CAFA. *Bell*, 557 F.3d at 956; *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446,

449 (7th Cir. 2005) (The complication is that a removing defendant can't make the plaintiff's claim for him..."). Furthermore, established U.S. Supreme Court precedent holds that a plaintiff may structure her complaint so as to plead less than the jurisdictional amount in order to avoid trying her case in federal court. *St. Paul Mercury*, 303 U.S. 283 at 294. By the same token, it is certainly within a defendant's rights to assert a basis for removal, should the defendant wish to avoid state court.

As it is Plaintiff's prerogative to define the class as she chooses, she may limit the class to Arkansas consumers, and she may also define the method and means through which relief is to be obtained for the class. It is of no moment that Plaintiff currently qualifies for inclusion in other nationwide class actions concerning the same product. The Plaintiff may assert her own claims, and she may set the terms for her class.

Defendants would prefer this Court to follow the Western District of Missouri's holding in *Bass v. Carmax Auto Superstores, Inc.*, 2008 WL 441962 (W.D. Mo., Feb. 14, 2008), for the proposition that a class plaintiff has no right to limit recovery for a class without court approval. However, the *Bass* case was decided before *Bell*, and the holding in *Bass* contradicts both the plain language and the spirit of the Eighth Circuit's holding in *Bell*.

This Court turns to a case from the federal court for the Eastern District of Arkansas, which is discussed here because its reasoning is more in line with *Bell* and is helpful in addressing

Defendants' concerns about the amount in controversy. *See Harris v. Sagamore Ins. Co.*, 2008 WL 4816471 (E.D. Ark., Nov. 3, 2008). In the *Harris* case, Judge Holmes summarized a number of due process protections available to defendants who are concerned about CAFA plaintiffs manipulating the judicial process and achieving an award in state court in excess of $5,000,000. These due process protections include: 1) allowing defendants to remove again later if plaintiff files pleadings that assert an amount in damages exceeding the jurisdictional maximum (*Cf. Interstate Oil & Supply Co. v. Troutman Oil Co.*, 972 S.W.2d 941, 943 (1998)); 2) prorating the recoverable damages among the class members; and 3) utilizing the doctrine of judicial estoppel, as recognized by the Supreme Court of Arkansas in *Dupwe v. Wallace*, 140 S.W. 3d 464 (2004), to bar a plaintiff who has stipulated to a cap on damages from recovering more than the jurisdictional maximum. *Harris*, 2008 WL 4816471 at *3.

Moreover, it is important to keep in mind that the Plaintiff in the case at bar has not yet been named class representative, nor has the class been certified by any court. It also follows that putative class members could simply opt out of the class and pursue their own remedies or join a different ongoing class action if they feel that the limitations placed on the class by the Plaintiff are too restrictive. *Cf. Feldman v. The Standard Fire Ins. Co.*, Case 4:08CV000143 JMM (Doc. 24, May 15, 2008) (remanding case to state court, noting CAFA plaintiff did not yet represent the class, as

the class had not yet been certified).

### C. Calculating the Amount in Controversy

#### 1. Face Value of Claims in the Complaint

Defendants argue that more than $5,000,000 is at stake, even though Plaintiff and her attorney insist otherwise. First, Defendants point to the stipulations themselves (Exh. 1 and 2, Doc. 2), which state that Plaintiff does not seek individual damages exceeding $75,000, and her attorneys do not seek fees and costs exceeding $75,000 for each class member. Defendants then make the observation that since there are potentially thousands of class members, this Court should take out a calculator and come to a number of derivative conclusions.

Specifically, it appears that Defendants want this Court to multiply $75,000 by 1000 class members to arrive at a $75,000,000 damage award. Defendants fail to meet their preponderance of the evidence burden by providing any real numbers on which to base Plaintiff's recovery. Significantly, Defendants do not even specify the number of consumers of their product in Arkansas, a number that is within Defendants' knowledge and would certainly assist in defining the size of the class. As Judge Wilson admonished in *Thomas v. Southern Pioneer Life Ins. Co.*, 2009 WL 4894695 at *2 (E.D. Ark. Dec. 11, 2009), "[a]rgument . . . is not evidence."

#### 2. Equitable Relief and "Other Relief Just and Proper"

Next, Defendants assert that Plaintiff could potentially

obtain injunctive relief through her claim for unjust enrichment, and this relief could amount to more than $5,000,000 in disgorged profits (the cost of Defendants' nationwide advertisement campaign for its shoes). The Eighth Circuit previously held in *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017 (8th Cir. 2010), that it does not endorse the rule followed by other circuits that the amount in controversy can sometimes be measured by the defendant's costs, rather than the potential benefit the plaintiff stands to gain in winning. *Id.* at 1019. Here, as in the *Anadarko* case, the Defendants did not offer even a modicum of proof to counter Plaintiff's sworn statement that her damages would not exceed the statutory maximum.

Similarly, though the ADTPA does entitle claimants to actual damages resulting from an offense or violation of the Act, whether that total would exceed $5,000,000 is pure speculation on the Defendants' part and is not supported by evidence sufficient to meet the preponderance of the evidence standard.

Finally, the boilerplate "catch-all" included in most complaints includes a plea for the court to award "such other relief as is just and proper." In this case the Plaintiff included such a catch-all in her plea for relief. Defendants, however, construe this plea to potentially include various forms of injunctive relief and punitive damage. Again, such relief is too speculative to be given credence by this Court. Moreover, this Court is unaware of any precedent that dictates that punitive

damages are assumed pled unless specifically disclaimed. Contrary to Defendants' assertions, the case of *Price v. USAA Cas. Inc. Co., et. al.*, Case 2:10CV02152 PKH (Doc. 17, Jan. 10, 2011), does not stand for this proposition.

### III. Conclusion

The Court finds that Defendants have failed to show by a preponderance of the evidence that this case should remain in federal court. The Court also finds that Plaintiff has shown to a legal certainty that the aggregate damages claimed on behalf of the putative class shall in good faith not exceed the state jurisdictional limitation of $5,000,000. Accordingly, Plaintiff's Motion to Remand (Doc. 13) is hereby **GRANTED**. Plaintiff's request for attorney fees and costs in pursuit of this motion are **DENIED**. This case shall be remanded forthwith to the Circuit Court of Ouachita County, Arkansas.

**IT IS SO ORDERED** this 21st day of April, 2011.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge